**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, INC.; H.O.P.E. INC. d/b/a HOPE FAIR HOUSING CENTER; and OPEN COMMUNITIES, | |
| Plaintiffs; | Case No. 14-CV-3197 |
| v. | |
| RYAN COMPANIES US, INC.; RYAN A + E, INC., f/k/a DESIGN BUILD ARCHITECTURAL SERVICES; JAMES N. BERGMAN; ICEBERG DEVELOPMENT GROUP, LLC; THOMAS and THOMAS ASSOCIATES, INC.; PIONEER PROPERTY MANAGEMENT, INC.; PPMI MANAGEMENT, LLC; RRG DEVELOPMENT, INC.; THOMAS PLACE, L.P.; THOMAS PLACE, LLC; TPA FOX LAKE, L.P.; TPA FOX LAKE GP, LLC; JNB HOMETOWN HARBOR BETTENDORF, L.P.; JNB HOMETOWN BETTENDORF, LLC; JNB HOMETOWN HARBOR WAUKEE, L.P.; JNB HOMETOWN WAUKEE, LLC; HOMETOWN HARBOR EAST MOLINE LIMITED PARTNERSHIP; ZURICH MEADOWS SENIOR APARTMENTS, L.P.; ZURICH MEADOWS APARTMENTS, LLC; TPA GURNEE, L.P.; TPA GURNEE GP, LLC; GARDINER SENIOR APARTMENTS, LP; GARDINER SENIOR DEVELOPMENT, LLC; TPA ORLAND, L.P.; TPA ORLAND GP, LLC; GHSA, LP; GHSA GP, LLC; ALICE PLACE, LP; ALICE PLACE GP, LLC; HOUSE OF LIGHT PROPERTIES, L.L.C.; RP LISLE, LP; and RP LISLE GP, LLC; | Jury Trial Demanded |
| Defendants. | |

**COMPLAINT**

The National Fair Housing Alliance, Inc. ("NFHA"), H.O.P.E. Inc. d/b/a HOPE Fair

Housing Center ("HOPE"), and Open Communities ("Open Communities")(collectively referred

to herein as "Plaintiffs") bring this action against developers of affordable, age-restricted

apartment complexes for seniors in Illinois and Iowa -- Ryan Companies US, Inc. ("Ryan Companies"), James N. Bergman ("Bergman"), and Thomas and Thomas Associates, Inc. ("Thomas Associates") --and their related entities, including designers, builders, and owners of such properties as identified more fully below, for violations of the accessibility requirements of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act Amendments of 1988 ("FHAA"), 42 U.S.C. § 3601-3619.  Plaintiffs also name certain managers and owners of these properties as necessary parties for complete relief pursuant to Fed. R. Civ. P. 19.

## I.    NATURE OF ACTION

1.    Plaintiffs bring this action against Defendants who jointly, severally, and/or individually acted as developers, designers, builders, owners and/or managers of certain affordable housing developments for seniors in Illinois and Iowa.  Starting in or about 2005, Defendants Bergman and Thomas Associates developed an affordable senior apartment complex in Glenview, Illinois, which Defendant Ryan Companies built.  Beginning with that joint venture and continuing to the present, these Defendants and related entities have jointly, severally, and/or individually continued to develop, design, construct, own and/or manage at least 12 affordable, multi-family, senior apartment complexes in Illinois and Iowa ("Subject Properties"), including over 800 age-restricted dwelling units.  *See* Exhibit A -- Subject Properties (incorporated by reference herein).

2.    As developers, designers, builders, owners, and managers of senior apartment complexes, Defendants have engaged in an ongoing and continuous pattern and/or practice of discrimination against people with disabilities in violation of the FHAA since approximately 2005, by designing and/or constructing multi-family dwellings and their associated common use

and public use areas in a manner that effectively denies people with disabilities full access to, and use of, these facilities as required by the FHAA.

3.        After an initial investigation, Plaintiffs conducted testing of nine senior apartment complexes developed, designed, and/or constructed jointly, severally and/or individually by Defendants Ryan Companies, Bergman, and Thomas Associates in Illinois and Iowa (the "Tested Properties"), for compliance with the FHAA.  Exhibit B -- Tested Properties (incorporated by reference herein).   The investigation and testing found that each of these senior apartment complexes failed to meet one or more accessibility requirements of the FHAA.

4.        Each of these properties was built after March 13, 1991, the effective date of the FHAA accessibility requirements.  Despite these legal requirements for accessible housing, Defendants Ryan Companies, Bergman and Thomas Associates and related entities have developed, designed and constructed dwelling units and common and public use areas that fail to meet the basic requirements of the FHAA, impairing accessibility in hundreds of affordable senior housing units for people with disabilities.

5.        In addition to the nine Tested Properties, Plaintiffs identified three additional senior apartment complexes that Defendants jointly, severally, and/or individually developed, designed and/or constructed after their first joint venture in 2005, and which are covered by the FHAA.  *See* Exhibit A.  Because these senior apartment complexes share common design features with the Tested Properties, including some designed with the use of a senior apartment complex prototype developed by Defendants, Plaintiffs have reason to believe that FHAA accessibility violations exist at those properties as well.  Plaintiffs have identified FHAA accessibility violations at all Tested Properties.

6.    The accessibility violations at the Tested Properties are serial and frequent and continue at the current time -- more than 20 years after the effective date of the FHAA accessibility requirements, March 13, 1991.  Thus, Plaintiffs believe that unless restrained by this Court, Defendants will continue to violate the rights of people with disabilities and frustrate the mission of the Plaintiff organizations that work to protect those rights.

7.    Defendants' violations of the FHAA design and construction requirements have significant consequences for people with disabilities.  As described in further detail below, the pattern and/or practice of FHAA violations are evident from features such as insufficient clear floor space in kitchens and bathrooms for use by persons in wheelchairs.  Public and common use areas in these complexes have inaccessible features such as lack of a proper access aisle for the accessible parking spaces, inaccessible routes to and through fitness areas, and common-use restrooms that lack sufficient clear floor space for persons using wheelchairs.  This pattern of violations effectively communicates to people with disabilities that they are not welcome at Defendants' properties.

8.    According to the 2004 American Community Survey conducted by the U.S. Census Bureau, more than 51 million Americans (nearly one in five) have some form of disability.  Of that number, more than 2.7 million people over the age of 15 use a wheelchair, and that number is expected to increase as the population ages.  Another 7 million use a cane, crutches, a walker, or other mobility aid.  The 2008 American Community Survey conducted by the U.S. Census Bureau reports 5.5 million veterans with disabilities, 3.4 million of which are service-related disabilities.

9.    The states of Illinois and Iowa have significant numbers of people with disabilities.  The 2011 Disability Status Report for Illinois, which is based on the U.S. Census

4

data, reports that 10.5 % of the Illinois population or 1,331,800 persons had a disability.[1] The 2011 Disability Status Report for Iowa reports that 11.4% of the Iowa population or 345,300 persons had a disability.[2] For seniors, those percentages are even higher. For Illinois, 23.7% of non-institutionalized persons ages 65-74 reported a disability in 2011. For Iowa, 22.4% of non-institutionalized persons ages 65-74 reported a disability in 2011.[3] Accessible housing is essential to ensuring that people with disabilities are able to participate in community life.

10.     Defendants' systemic and continuing violations of the FHAA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities. Their violations have frustrated the missions of the Plaintiffs and caused Plaintiffs to divert their resources in an attempt to redress these violations. Defendants' actions in this regard show reckless and/or callous disregard for the federally protected rights of disabled persons.

11.     Enforcement of the FHAA against these Defendants is necessary because of the extensive and continuing nature of their civil rights violations at the numerous senior apartment complexes in Illinois and Iowa.

12.     Plaintiffs seek a declaratory judgment, permanent injunctive relief, compensatory and punitive damages, and other appropriate relief for this discrimination.

## II.     JURISDICTION AND VENUE

13.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1332, and 1343, 42 U.S.C. §§ 3613 and 3617, and 28 U.S.C. §§ 2201 and 2202.

---

[1] Erickson, W. Lee, C., & von Schrader, S., 2011 Disability Status Report (2012), Ithaca, NY: Cornell University Employment and Disability Institute, available at http://www.disabilitystatistics.org/.
[2] *Id.*
[3] American Community Survey, U.S. Census Bureau, 2011.

14. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) as a substantial part of the events and omissions giving rise to the Plaintiffs' claims occurred in this District and relate to real property located in this District.

### III. PARTIES

#### *Plaintiffs*

15. Plaintiff National Fair Housing Alliance, Inc. ("NFHA") is a national non-profit public service organization dedicated to the elimination of housing discrimination and the promotion of equal housing opportunity for all. With an alliance of local organizations including private, non-profit fair housing organizations in 28 states including Illinois, NFHA pursues its mission through leadership, education, outreach, membership services, public policy initiatives, investigations, advocacy, and enforcement. Ensuring that people with disabilities have accessible housing is a key objective of NFHA's work and to accomplish that objective NHFA has, since 1992, conducted local, state and national educational campaigns, including campaigns in Illinois and Iowa, to promote accessibility in the housing market. NFHA also conducts trainings, investigations, and testing of housing developments to ensure enforcement of fair housing laws. NFHA is incorporated under the laws of the Commonwealth of Virginia with its principal place of business at 1101 Vermont Avenue, N.W., Suite 710, Washington, D.C. 20005.

16. H.O.P.E. Inc. d/b/a/ HOPE Fair Housing Center ("HOPE") is a non-profit organization whose mission is creating greater housing opportunities for all and ending housing discrimination on the basis of race, color, religion, national origin, sex, disability, familial status, or any other characteristics protected under federal, state, or local laws. To accomplish these goals, HOPE provides counseling and training to persons seeking to rent or purchase a home and to home providers on their rights and responsibilities under fair housing laws. HOPE also

6

provides education, outreach to the community and community organizations, and undertakes advocacy work and fair housing enforcement work as well. HOPE's mission is to establish viable, economically sound, integrated communities. HOPE is incorporated under the laws of the state of Illinois and operates from its offices at 245 W. Roosevelt Road, Building 15, Suite 107, West Chicago, IL 60185.

17. Open Communities is a non-profit, membership-based organization located in Winnetka, Illinois. Its mission is to educate, advocate, and organize to promote just and inclusive communities in north suburban Chicago. Formerly known as the Interfaith Housing Center of the Northern Suburbs, the organization works with current and prospective residents and local groups to promote economically and culturally diverse communities in north suburban Chicago. Open Communities provides housing counseling services, community education, advocacy, and organizing for welcoming communities. It also provides fair housing enforcement services. Open Communities operates from its offices at 614 Lincoln Avenue, Winnetka, IL 60093.

### *Design/Build Defendants*

18. The Design/Build Defendants are jointly, severally, and/or individually liable for an ongoing and continuous pattern and/or practice of designing and/or constructing multi-family dwellings and their associated common use and public use areas in a manner that effectively denies people with disabilities full access to, and use of, these facilities as required by the FHAA. See Exhibit C -- Role of Each Design/Build Defendant in the Subject Properties (incorporated by reference herein).[4]

---

[4] The information in Exhibit C is based on what is currently known through publicly available information.

19.     Defendant Ryan Companies US, Inc., ("Ryan Companies"), f/k/a Ryan Companies and/or Ryan Properties, Inc., is a national builder, designer, developer, and real estate manager.  Ryan Companies developed, designed, constructed, and/or owns of many of the Subject Properties.[5]  Ryan Companies' wholly-owned subsidiary, Defendant Ryan A + E, Inc., is the architect for many of the Subject Properties.  Ryan Companies is a member of numerous individual limited liability corporations and/or is the general partner of numerous limited partnerships which engaged in actions to develop, design, and/or construct many of the Subject Properties, including securing the tax credits for financing such properties, and owning many of the Subject Properties.

20.     Ryan Companies is the alter ego for TPA Gurnee, L.P.; TPA Gurnee GP, LLC; TPA Fox Lake, L.P.; TPA Fox Lake GP, LLC; TPA Orland Park L.P.; TPA Orland Park GP LLC; RP Lisle L.P.; and RP Lisle GP, LLC.  There is a unity of interest and ownership between Ryan Companies and these entities such that their separate personalities do not exist.  To adhere to any corporate fiction regarding these entities would promote inequitable consequences or injustice.

21.     Ryan Companies is a Minnesota corporation with its headquarters located at 50 South Tenth Street, Suite 300, Minneapolis, MN 55403.  Ryan Companies does business in the state of Illinois and maintains an office at 111 Shuman Blvd., Suite 400, Naperville, Illinois 60563.

22.     Defendant Ryan A + E, Inc., ("Ryan A + E"), f/k/a Design Build Architectural Services, Inc., is an Iowa corporation with its home office at 201 North Harrison, Suite #400

---

[5] On its website, Ryan admits that it is co-owner, co-developer and design-builder of TP Fox Lake, TP Gurnee, and TP Orland Park, and that it is co-developer and designer of TP Waukee and TP Bettendorf. Ryan's website identifies Defendant Bergman as its joint venture partner for these properties. http://www.ryancompanies.com/projects/thomas-place-fox-lake/

Davenport, IA, 52801. Ryan A + E is a wholly-owned subsidiary of Ryan Companies.[6] All officers of Ryan A + E share the same address with the principal offices of Ryan Companies and the leadership of the corporations overlaps. The President of Ryan A + E, Timothy M. Gray, is the Secretary of Ryan Companies. Ryan A + E and/or its predecessor Design Build Architectural Services, Inc., which was also a wholly-owned subsidiary of Ryan Companies, is the architect for numerous of the Subject Properties, and in this capacity Ryan A + E and Ryan Companies as its parent are responsible for the design and construction of such properties.

23.     Ryan A + E and Design Build Construction Services, Inc. are the alter egos of Ryan Companies. There is a unity of interest and ownership between these entities such that their separate personalities do not exist. To adhere to this corporate fiction would promote inequitable consequences or injustice. Ryan A + E does business in the state of Illinois.

24.     Defendant James N. Bergman ("Bergman") resides at 20 Sandstone Court, LeClaire, Iowa 52753. According to the Ryan Companies' website, Defendant Bergman is a joint venture development partner of Defendant Ryan Companies. In his individual and/or official capacity, Defendant Bergman was responsible for the development, design, construction, ownership, and property management of many of the Subject Properties. Further, Defendant Bergman is a managing member, sole member, member, officer, partner, and/or is otherwise affiliated with numerous entities (such as various Illinois and Iowa limited partnerships and limited liability corporations as well as Defendant Iceberg Development Group, LLC, described below) that developed, designed, constructed, own, and manage many of the Subject Properties. In his various roles, including as the sole and/or managing member of multiple limited liability corporations which were the general partners of limited partnerships, Defendant Bergman secured Illinois and Iowa Low Income Housing Tax Credits ("LIHTCs") for financing many of

---

[6] http://www.ryancompanies.com/ryan/press-and-awards-1/thomas-place-gurnee-complete/

the Subject Properties. Defendant Bergman is also an officer of Defendant Pioneer Property Management, Inc. (described below), which manages several of the Subject Properties.

25. Defendant Bergman is the alter ego for the limited liability corporations and limited partnerships that develop, design, construct, own, and manage many of the Subject Properties. Defendant Bergman is the alter ego of Iceberg Development Group, LLC; Pioneer Property Management, Inc.; Thomas Place, L.P.; Thomas Place, LLC; TPA Gurnee, L.P.; TPA Gurnee GP, LLC; JNB Hometown Harbor Bettendorf, L.P.; JNB Hometown Bettendorf, LLC; Gardiner Senior Apartments, LP; Gardiner Senior Development, LLC; JNB Gardiner Annex LLC; TPA Fox Lake, L.P.; TPA Fox Lake GP, LLC; TPA Orland L.P.; TPA Orland GP, LLC; JNB Hometown Harbor Waukee, L.P.; JNB Hometown Waukee, LLC; Hometown Harbor East Moline Limited Partnership; Alice Place, LP; and Alice Place GP, LLC. There is a unity of interest and ownerships between Bergman and these entities such that their separate personalities do not exist. To adhere to this corporate fiction would promote inequitable consequences or injustice.

26. Defendant Bergman described his role in developing, owning, and managing apartment complexes during an October 23, 2013, town hall meeting in Hamilton, Illinois. According to a report of that meeting, Bergman stated: "I own 50 to 60 complexes. . . . I don't have a company. It's me. I don't have employees. I run everything."[7] According to the Ryan Companies website, as of 2012, Defendant Bergman:

> has been involved in the development and ownership of approximately 30 projects totaling 2,000 units in Illinois, Iowa, Wisconsin and Mississippi. His portfolio of properties, including Thomas Place Glenview and Thomas Place Fox Lake, maintains a 95 percent occupancy level.[8]

---

[7] Cindy Iutzi, Hamilton Residents Resist Proposed Housing Project, *Daily Gate City*, Oct. 24, 2013 available at http://www.dailygate.com/article_25f1d208-579d-5356-8fa5-4e21b1c76dd2.html.
[8] Ryan Companies, Thomas Place Gurnee Complete (June 7, 2012), http://www.ryancompanies.com/ryan/press-and-awards-1/thomas-place-gurnee-complete/.

Defendant Bergman regularly does business in Illinois and owns property in Illinois.

27. Defendant Iceberg Development Group, LLC ("Iceberg Development") is an Illinois corporation with its principal place of business at 20 Sandstone Court, LeClaire, IA 52753. Defendant Bergman is the only member of Iceberg Development. On information and belief, Iceberg Development was involved in and responsible for the development, design, construction, ownership, and property management of many of the Subject Properties, including Gardiner Place and Hometown Harbor East Moline. The statutory violations committed by Iceberg Development were also personally committed and/or approved by Defendant Bergman in his role as the sole member and alter ego of Iceberg Development.

28. Defendant Thomas and Thomas Associates, Inc. ("Thomas Associates") is a firm that specializes in affordable housing development. It worked with Ryan and Bergman on their initial joint venture in the development and construction of the senior apartment complex in Glenview, Illinois. Thomas Associates claims on its website to have:

> develop[ed] the initial Thomas Place senior independent living apartment community. Thomas & Thomas structured the financial package, obtained additional partners and uncovered the unit layout that produced one of the most successful tax credit developments in the country.[9]

Thomas Associates is an Illinois corporation with its principal place of business at 727 Pleasant Lane, Glenview, IL 60025. Thomas F. Monico and Paul H. Thomas are the owners of Thomas Associates, which has had joint ventures with Ryan Companies, Bergman, and others to develop several of the Subject Properties, including but not limited to TP Glenview, TP Fox Lake, TP Gurnee, and TP Glendale Heights, which opened in December 23, 2013. In its various roles,

---

[9] See http://www.thomasthomasassociates.com/Services.php.

Thomas Associates is responsible for the design and construction for such Subject Properties. Thomas Associates does business in Illinois.

29.     Additional Design/Build Defendants for specific properties are identified below and include:  TP Gurnee, L.P.; TPA Gurnee GP, LLC; Gardiner Senior Apartments, LP; Gardiner Senior Development, LLC; TPA Orland, L.P.; TPA Orland GP, LLC, GHSA, LP; GHSA GP, LLC; Alice Place, LP; Alice Place GP, LLC; RP Lisle, LP, and RP Lisle GP, LLC.

### *Management and Owner Defendants*

30.     On information and belief, Owner Defendants are owners of age-restricted senior apartment complexes that are typically, but not exclusively, multi-story elevator buildings with common use areas that were developed, designed, and constructed after March 13, 1991, by the Design/Build Defendants and thereafter managed by or under the direction of one or more of the Management Defendants and/or Owner Defendants.  The Owner Defendants are necessary parties for complete relief pursuant to Fed. R. Civ. P. 19.

31.     On information and belief, Management Defendants are property managers of age-restricted senior apartment complexes that are typically, but not exclusively, multi-story elevator buildings with common use areas that were developed, designed, and constructed after March 13, 1991, by the Design/Build Defendants.  The Management Defendants are necessary parties for complete relief pursuant to Fed. R. Civ. P. 19.

32.     As discussed above and designated below, certain Owner and Management Defendants named for remedial purposes are also Design/Build Defendants who are named for liability purposes.  See Exhibit C, which identifies Owner Defendants named for purposes of liability and Exhibit D, \which lists Management and Owner Defendants Necessary for Complete Relief (incorporated by reference herein).

*Management Defendants*

33.     Defendant Pioneer Property Management, Inc. ("Pioneer Management") is a property management company with its principal office at 65 Elm Street, Box 703, Platteville, Wisconsin.  Defendant Bergman is an officer of Defendant Pioneer Management, which manages Subject Properties in Illinois and Iowa, including but not limited to senior complexes, in Glendale Heights, Illinois; Gurnee, Illinois; East Moline, Illinois; Bettendorf, Iowa; Fox Lake, Illinois; Glenview, Illinois; and Waukee, Iowa.  Pioneer Management is a Management Defendant necessary for complete relief under Fed. R. Civ. P. 19.

34.     Defendant PPMI Management, LLC is an Illinois limited liability corporation with its principal office at 229 Thomas Lane, Fox Lake, Illinois 60020.  On information and belief, PPMI Management, LLC works with Defendant Pioneer Property Management to manage a number of the Subject Properties.  As such, PPMI Management, LLC is a Management Defendant necessary for complete relief under Fed. R. Civ. P. 19.

35.     Defendant RRG Development, Inc. is an Illinois corporation, which manages Subject Properties in Orland Park, Illinois and East Dundee, Illinois.  It is located at 2001 W. Churchill, Chicago, Illinois 60647.  RRG Development, Inc. is necessary for complete relief under Fed. R. Civ. P. 19.

*Owner Defendants*

36.     The Owner Defendants for each of the Subject Properties are described below:[10]

**Thomas Place Glenview ("TP Glenview")**

37.     Defendant Thomas Place, L.P. is an owner of TP Glenview -- an age-restricted, senior apartment complex at 2200 Patriot Blvd., Glenview, IL 60026, which opened in 2006. Thomas Place, L.P. was the owner of TP Glenview at the time of its design and/or construction

---

[10] Owner Defendants are named for liability and/or remedial relief.  See Exhibits C and D.

and was responsible for TP Glenview's design and/or construction. As an Owner Defendant, Thomas Place, L.P. is a necessary party for complete relief. Thomas Place, L.P. is an Illinois limited partnership with its designated office at 727 Pleasant Lane, Glenview, Illinois 60025. Its general partners are Defendant Thomas Place, LLC and Glenview Elderly Programs North. Paul Thomas was the president of Glenview Elderly Programs North at the time TP Glenview was developed, designed, and built, and at the time low income tax credits were secured. Mr. Thomas is a principal of Defendant Thomas Associates. Defendant Bergman is a managing member of Thomas Place, LLC. The statutory violations committed by Thomas Place, L.P. were also personally committed and/or approved by Defendant Thomas Place, LLC in its role as general partner and Defendant Bergman in his role as managing member of Thomas Place, LLC.

38. Defendant Thomas Place, LLC is also an owner of TP Glenview. Thomas Place, LLC was the owner of TP Glenview at the time of its design and/or construction, and was responsible for its design and/or construction. As an Owner Defendant, it is a necessary party for complete relief. Thomas Place, LLC is an Illinois limited liability corporation with its principal office at 20 Sandstone Ct., LeClaire, Iowa 52573. Thomas Place, LLC is the managing general partner of Thomas Place, L.P. Defendant Bergman is the managing member of Thomas Place, LLC.[11] The statutory violations Defendant Thomas Place, LLC were also personally committed and/or approved by Defendant Bergman in his role as managing member of Thomas Place, LLC.

---

[11] Additionally, Defendant Bergman, along with David Smith, was the principal member of Equity Growth-Residential, a developer of TP Glenview. Equity Growth Group Residential, Inc. was an Illinois corporation with its principal place of business at 2117 State Street, Bettendorf, IA 52722. The corporation was involuntarily dissolved in in 2008. Defendant Bergman was also involved with Equity Growth Group, LLC, an Illinois corporation with principal offices at 852 Middle Road in Bettendorf, Iowa. Defendant Bergman is and/or was the Vice President of Equity Growth, which has been involved in the development, design, construction, ownership and/or management of several of the Subject Properties, including TP Bettendorf, TP Fox Lake, and TP Waukee.

**Thomas Place Fox Lake ("TP Fox Lake")**

39. Defendant TPA Fox Lake, L.P. currently owns TP Fox Lake apartments located at 27292 W. Nippersink Road, Fox Lake, IL 60020, which opened in 2010. TPA Fox Lake, L.P. was the owner and developer of TP Fox Lake at the time of its design and/or construction and was responsible for its design and/or construction, along with co-developers Thomas Associates, Ryan Companies, and Bergman. As a current owner of TP Fox Lake, TPA Fox Lake, L.P. is an Owner Defendant and a necessary party for complete relief. TPA Fox Lake, L.P. is an Illinois limited partnership with its designated office at 727 Pleasant Lane in Glenview, Illinois 60025.

40. Defendant TPA Fox Lake GP, LLC, which is comprised of managing member Defendant Bergman and Defendant Ryan Companies, is a general partner of TPA Fox Lake, L.P. The statutory violations committed by TPA Fox Lake, L.P. were also personally committed and/or approved by Defendant TPA Fox Lake GP, LLC in its role as general partner and Defendants Bergman and Ryan Companies in their roles as members of Defendant TPA Fox Lake GP, LLC.

41. Defendant TPA Fox Lake GP, LLC is also an owner of TP Fox Lake. TPA Fox Lake GP, LLC was an owner and developer of TP Fox Lake at the time of its design and/or construction and was responsible for its design and/or construction. As a current owner of TP Fox Lake, TPA Fox Lake GP, LLC is an Owner Defendant and a necessary party for complete relief. TPA Fox Lake GP, LLC is an Illinois limited liability corporation with its principal place of business at 727 Pleasant Lane in Glenview, Illinois 60025. Its members are Defendant Bergman and Defendant Ryan Companies. Defendant Bergman is a managing member. The statutory violations committed by TPA Fox Lake GP, LLC were also personally committed and/or approved by Defendants Bergman and Ryan Companies in their roles as members of

Defendant TPA Fox Lake GP, LLC. Defendants Bergman and Ryan Companies are the alter egos of TPA Fox Lake GP, LLC. There is a unity of interest and ownership such that the separate personality of TPA Fox Lake GP, LLC does not exist. Adhering to this corporate fiction would promote inequitable consequences or injustice.

### Thomas Place Bettendorf ("TP Bettendorf")

42.     Defendant JNB Hometown Harbor Bettendorf, L.P. currently owns **TP Bettendorf,** an age-restricted, senior apartment complex located at 2205 Kimberly Road, Bettendorf, IA 52722, which opened in 2010. JNB Hometown Harbor Bettendorf, L.P. was the owner of TP Bettendorf at the time of its design and/or construction, and was responsible for its design and/or construction. As a current owner, it is an Owner Defendant and a necessary party for complete relief. JNB Hometown Harbor Bettendorf, L.P. is an Iowa limited partnership with its home office at 20 Sandstone Ct, Le Clair, Iowa 52753. Until approximately 2008, Defendant Bergman was the general partner of JNB Hometown Harbor Bettendorf, L.P. JNB Hometown Bettendorf, LLC is now the general partner of JNB Hometown Harbor Bettendorf, L.P. The statutory violations committed by JNB Hometown Harbor Bettendorf, L.P. were also personally committed and/or approved by Defendant Bergman in his personal capacity and in his role as managing member of JNB Hometown Bettendorf, LLC. The statutory violations committed by JNB Hometown Harbor Bettendorf, L.P. were also personally committed JNB Hometown Bettendorf, LLC as its general partner.

43.     Defendant JNB Hometown Bettendorf, LLC is also an owner of TP Bettendorf. JNB Hometown Bettendorf, LLC was the owner of TP Bettendorf at the time of its design and/or construction, and was responsible for its design and/or construction. As a current owner, JNB Hometown Bettendorf, LLC is an Owner Defendant and a necessary party for complete relief.

JNB Hometown Bettendorf, LLC is an Iowa corporation with its home office at 20 Sandstone Ct, Le Clair, Iowa 52753. Defendant Bergman is the managing member of JNB Hometown Bettendorf, LLC. JNB Hometown Bettendorf, LLC is now the general partner of JNB Hometown Harbor Bettendorf, L.P. The statutory violations committed by JNB Hometown Harbor Bettendorf, LLC were also personally committed and/or approved by Defendant Bergman in his role as a member.

### Thomas Place Waukee ("TP Waukee")

44.     Defendant JNB Hometown Harbor Waukee, L.P. is an owner of **TP Waukee** apartments located at 560 S.E. Brick Drive, Waukee, IA 50263, which opened in 2010. JNB Hometown Harbor Waukee, L.P. was the owner and developer of TP Waukee at the time of its design and/or construction and was responsible for its design and/or construction. As a current owner, JNB Hometown Harbor Waukee, L.P. is an Owner Defendant and a necessary party for complete relief. JNB Hometown Harbor Waukee, L.P. is an Iowa limited partnership with its principal place of business at 20 Sandstone Ct., LeClaire, Iowa 52753. Its general partner is JNB Hometown Waukee, LLC, whose managing member is Defendant Bergman. The statutory violations committed by JNB Hometown Harbor Waukee, L.P. were also personally committed and/or approved by Defendant JNB Hometown Waukee, LLC in its role as general partner and Defendant Bergman in his role as managing member of Defendant JNB Hometown Waukee, LLC.

45.     Defendant JNB Hometown Waukee, LLC is also an owner of TP Waukee. JNB Hometown Waukee, LLC was an owner and developer of TP Waukee at the time of its design and/or construction and was responsible for its design and/or construction. As a current owner, JNB Hometown Waukee, LLC is an Owner Defendant and a necessary party for complete relief.

17

JNB Hometown Waukee, LLC an Iowa liability corporation with its principal place of business at 20 Sandstone Ct., LeClaire, Iowa 52753.

46.     Defendant Bergman is a managing member of JNB Hometown Waukee, LLC, which is a general partner of JNB Hometown Harbor Waukee, L.P.  The statutory violations committed by JNB Hometown Waukee, LLC were also personally committed and/or approved by Defendant Bergman in his role as managing member.

**Hometown Harbor East Moline ("HH East Moline")**

47.     Defendant Hometown Harbor East Moline Limited Partnership currently owns **HH East Moline** apartments located at 1011 49th Ave., East Moline, IL 61244, which opened in 2011.   Hometown Harbor East Moline Limited Partnership was an owner and developer of HH East Moline at the time of its design and/or construction and was responsible for its design and/or construction.  As a current owner, Hometown Harbor East Moline Limited Partnership is an Owner Defendant and a necessary party for complete relief.  Hometown Harbor East Moline Limited Partnership is an Illinois limited partnership with its designated office at 20 Sandstone Court, LeClaire, Iowa 52753.

48.     The managing general partner of Hometown Harbor East Moline Limited Partnership is Defendant Iceberg Development Group, LLC.  Defendant Bergman is the only member of Iceberg Development and as such the statutory violations committed and/or approved by Hometown Harbor East Moline Limited Partnership were also personally committed and or approved by Defendant Bergman in his role as the sole member of Iceberg Development.

49.     Defendant Iceberg Development Group, LLC, as managing general partner of Hometown Harbor East Moline Limited Partnership, was an owner and developer of HH East Moline at the time of its design and/or construction.  In this capacity, it is responsible for its

design and/or construction and is a Design/Build Defendant. As a current owner, Iceberg

Development Group, LLC, is an Owner Defendant and a necessary party for complete relief.

Defendant Bergman is the only member of Iceberg Development and as such the statutory

violations committed and/or approved by Iceberg Development were also personally committed

and or approved by Defendant Bergman.

### Zurich Meadows

50.     Defendant Zurich Meadows Senior Apartments, L.P. currently owns **Zurich**

**Meadows** apartments located at 250 Mohawk Trail, Lake Zurich, IL 60047, which opened in

2012. As a current owner, Zurich Meadows Senior Apartments, L.P. is an Owner Defendant and

a necessary party for complete relief. Zurich Meadows Senior Apartments, L.P. is an Illinois

limited partnership with its designated office at 325 W. Huron, Suite 509, Chicago, Illinois

60654.

51.     Defendant Zurich Meadows Apartments, LLC is a general partner of Zurich

Meadows Senior Apartments, L.P. and as such is also an owner of Zurich Meadows. As a

current owner, Zurich Meadows Apartments, LLC is an Owner Defendant and a necessary party

for complete relief. Zurich Meadows Apartments, LLC is an Illinois limited liability corporation

with its principal place of business at 325 W. Huron, Suite 509, Chicago, Illinois 60654.

### Thomas Place Gurnee ("TP Gurnee")

52.     Defendant TPA Gurnee, L.P. owns **TP Gurnee --** an age-restricted, senior

apartment complex at 401 N. Hunt Club Road, Gurnee, IL 60031. TPA Gurnee, L.P. was the

owner of TP Gurnee at the time of its design and/or construction, which was completed

approximately May 24, 2012. In this capacity, it is liable for TP Gurnee's FHAA design and/or

construction violations and is a Design/Build Defendant, along with co-developers Thomas

Associates, Ryan Companies, and Bergman. TPA Gurnee, L.P. is also an Owner Defendant and a necessary party for complete relief. TPA Gurnee, L.P. is an Illinois limited partnership with its designated office at 727 Pleasant Lane Glenview, IL 60025. TPA Gurnee GP, LLC is the general partner of TPA Gurnee, L.P.

53. The statutory violations committed by TPA Gurnee, L.P. were also personally committed and/or approved by Defendant TPA Gurnee GP, LLC in its role as a general partner of TPA Gurnee, L.P., and by Defendants Bergman and Ryan Companies in their roles as members of TPA Gurnee GP, LLC.

54. Defendant TPA Gurnee GP, LLC is also an owner of TP Gurnee and was the owner of TP Gurnee at the time of its design and/or construction. In this capacity, it is liable for TP Gurnee's FHAA design and/or construction violations and is a Design/Build Defendant. As a current owner, it is an Owner Defendant and a necessary party for complete relief. TPA Gurnee GP, LLC is the general partner of TPA Gurnee, L.P. TPA Gurnee GP, LLC's members include Defendant Bergman and Defendant Ryan Companies. TPA Gurnee GP, LLC is an Illinois corporation with its principal office at 4511 Old Ivy Ct., Bettendorf, IA 52722.

55. Defendant Bergman is the managing member of TPA Gurnee GP, LLC. The statutory violations committed by TPA Gurnee GP, LLC were also personally committed and/or approved by Defendants Bergman and Ryan Companies in their roles as members. Defendants Bergman and Ryan Companies are the alter egos of TPA Gurnee GP, LLC. There is a unity of interest and ownership such that the separate personality of TPA Gurnee GP, LLC does not exist. Adhering to this corporate fiction would promote inequitable consequences or injustice.

### **Gardiner Place**

56.     Gardiner Senior Apartments, LP is an owner of **Gardiner Place** senior apartments located at 251 River Haven Dr., East Dundee, IL 60118.   Gardiner Senior Apartments, LP was the owner of Gardiner Place at the time of its design and/or construction and was responsible for its design and/or construction, which was completed in approximately June 2013.  In this capacity, it is liable for FHAA design and/or construction violations at Gardiner Place and is a Design/Build Defendant.  As a current owner of Gardiner Place, Gardiner Senior Apartments, LP is also an Owner Defendant and a necessary party for complete relief.  Gardiner Senior Apartments, LP is an Illinois limited partnership with its designated office at 20 Sandstone Court, LeClaire, Iowa, 52753.  Its general partner is Gardiner Senior Development, LLC, of which Defendant Iceberg Development is a member.  The statutory violations committed by Gardiner Senior Apartments, LP were also personally committed and/or approved by Defendant Gardiner Senior Development, LLC in its role as general partner and by Defendant Bergman in his role as member of Defendant Gardiner Senior Development, LLC.

57.     Gardiner Senior Development, LLC is also an owner of Gardiner Place.  Gardiner Senior Development, LLC was the owner of Gardiner Place at the time of its design and/or construction and is liable for FHAA design and/or construction violations at Gardiner Place.  In this capacity, it is a Design/Build Defendant.  As a current owner, Gardiner Senior Development, LLC is also an Owner Defendant and a necessary party for complete relief.  Gardiner Senior Development, LLC is an Illinois limited liability corporation with its principal place of business at 20 Sandstone Court, LeClaire, IA.  Defendant Iceberg Development is the managing member of Gardiner Senior Development, LLC.  The statutory violations committed by Gardiner Senior

Development, LLC were also personally committed and/or approved by Defendant Bergman in his role as managing member.[12]

**Thomas Place Orland Park ("TP Orland Park")**

58.     Defendant TPA Orland, L.P. is an owner of **TP Orland Park** apartments located at 15415 S. Harlem Ave., Orland Park, Illinois 60462.   TPA Orland, L.P. was the owner and developer of TP Orland Park at the time of its design and/or construction, which was completed in approximately March 2013.  In this capacity, it is liable for FHAA design and/or construction violations at TP Orland Park and is a Design/Build Defendant.  As a current owner of TP Orland Park, TPA Orland, L.P. is also an Owner Defendant and a necessary party for complete relief. TPA Orland, L.P. is an Illinois limited partnership with its designated offices at 111 Shuman Blvd, Suite 400, Naperville, Illinois 60563.

59.     Defendant TPA Orland GP, LLC, which is comprised of managing member Defendant Bergman and Defendant Ryan Companies, is a general partner of TPA Orland, L.P. The statutory violations committed by TPA Orland, L.P. were also personally committed and/or approved by Defendant TPA Orland GP, LLC in its role as general partner and by Defendants Bergman and Ryan Companies in their roles as members of Defendant TPA Orland GP, LLC.

60.     Defendant TPA Orland GP, LLC is a current owner of TP Orland Park.  TPA Orland GP, LLC was an owner and developer of TP Orland Park at the time of its design and/or construction.  In this capacity, it is liable for FHAA design and/or construction violations at TP Orland Park and is a Design/Build Defendant.  As a current owner of TP Orland Park, TPA Orland GP, LLC is an Owner Defendant and a necessary party for complete relief.  Its members

---

[12] On information and belief, JNB Gardiner Annex, LLC, an Illinois limited liability corporation with its principal place of business at 20 Sandstone Court, LeClaire, Iowa 52753, may also have been involved in the development, design, construction, and/or ownership of Gardiner Place.   Defendant Bergman is the managing member of JNB Gardiner Annex, LLC.

are Defendant Bergman, Defendant Ryan Companies, and Providence Management and Development Corporation, Inc.

61.     Defendant Bergman is a managing member of TPA Orland GP, LLC.[13]  The statutory violations committed by Defendant TPA Orland GP, LLC were also personally committed and/or approved by Defendants Bergman and Ryan Companies in their roles as members of Defendant TPA Orland GP, LLC.  Defendants Bergman and Ryan Companies are the alter egos of TPA Orland GP, LLC.  There is a unity of interest and ownership such that the separate personality of TPA Orland GP, LLC does not exist.  Adhering to this corporate fiction would promote inequitable consequences or injustice.

**Thomas Place Glendale Heights ("TP Glendale Heights")**

62.     Defendant GHSA, LP is an owner of TP Glendale Heights located at 1123 Bloomingdale Road, Glendale Heights, Illinois.  GHSA, LP was the owner and developer of at the time of design and/or construction, which was completed in approximately December 2013.  In this capacity, it is liable for FHAA design and/or construction violations at TP Glendale Heights and is a Design/Build Defendant, along with co-developer Thomas Associates.  As a current owner, GHSA, LP is also an Owner Defendant and a necessary party for complete relief.  GHSA, LP is an Illinois limited partnership with its designated office at 343 Wainwright Dr., Northbrook, Illinois 60062.

63.     Defendant GHSA GP, LLC is a general partner of GHSA, LP.  The statutory violations committed by GHSA, LP were also personally committed and/or approved by Defendant GHSA GP, LLC in its role as a general partner.

---

[13] On information and belief, an entity called TP Orland Park Affordable Senior Development, LLC, an Illinois limited liability corporation with its principal place of business at 20 Sandstone Court LeClaire, Iowa 52753, may be involved in the development, design, construction and/or ownership of TP Orland. Its members are Defendant Bergman and Providence Management and Development.

64.     Defendant GHSA GP, LLC is also an owner of TP Glendale Heights.  It was the owner and developer of at the time of design and/or construction.  In this capacity, it is liable for FHAA design and/or construction violations at TP Glendale and is a Design/Build Defendant. As a current owner, GHSA GP, LLC is also an Owner Defendant and a necessary party for complete relief.  GHSA GP, LLC is an Illinois limited liability partnership with its principal place of business at 343 Wainwright Dr., Northbrook, Illinois 60062.  It is the general partner of GHSA, LP.

**Alice Place**

65.     Defendant Alice Place, LP owns **Alice Place**, also known as Alice Place Retirement Village, an age-restricted senior apartment complex that is currently being built at 255 SE Brick Dr., Waukee, Iowa.  A building permit was issued for Alice Place on October 18, 2013.  Alice Place, LP is both the owner and the developer of Alice Place.  In this capacity, Alice Place, LP is liable for Alice Place's FHAA design and/or construction violations and is a Design/Build Defendant.  As an Owner Defendant, Alice Place, LP is also a necessary party for complete relief.  Alice Place, LP is an Iowa limited partnership with its designated office at 20 Sandstone Court, LeClaire, Iowa 52753.

66.     Defendant Alice Place GP, LLC, whose sole managing member is Defendant Bergman, is the sole general partner of Alice Place, LP.  The statutory violations committed by Alice Place, LP were also personally committed and/or approved by Defendant Alice Place GP, LLC, its general partner, and Defendant Bergman, its managing member.

67.     Alice Place GP, LLC is also an owner and developer of Alice Place.  As such, it is liable for FHAA design and/or construction violations at Alice Place and is a Design/Build Defendant; it is also an Owner Defendant necessary for complete relief.  Alice Place GP, LLC is

located at 20 Sandstone Ct., LeClaire, Iowa 52573. Its managing member and sole member is Defendant Bergman. The statutory violations committed by Alice Place GP, LLC were also personally committed by Defendant Bergman in his role as managing and sole member.

**Lisle Senior Housing a/k/a Arbor Place**

68. On information and belief, Defendant House of Light Properties, L.L.C. is the owner of the property where Defendant Ryan Companies is currently designing, developing and preparing to build **Lisle Senior Housing** (also known as **Arbor Place**), an age-restricted senior apartment complex at or near 3060-3080 Ogden Avenue in Lisle, Illinois, with similar design features and floor plans to the Subject Properties.

69. On information and belief, Defendant Ryan Companies intends to purchase the property at or near 3060-3080 Ogden Avenue. The property is described in Village of Lisle Ordinance No. 2014-4524, which was passed on March 17, 2014. Defendant Ryan Companies is the "contract purchaser" of the property and petitioner for a preliminary subdivision plat, special use permit, and sign code variation from the Village of Lisle to develop and build Lisle Senior Housing. On information and belief, and according to the Village of Lisle Planning and Zoning Commission December 18, 2013, Public Hearing Minutes, Defendant Ryan Companies intends to "maintain ownership" of Lisle Senior Housing. As such, on information and belief, RP Lisle, LP[14] is the developer and future owner of Lisle Senior Housing. In this capacity, Ryan Companies and RP Lisle, LP are responsible for design and/or construction and are Design/Build Defendants. As Owner Defendants, Ryan Companies and RP Lisle, LP are also necessary parties for complete relief.

---

[14] David Erickson represents both Ryan Companies US, Inc. and RP Lisle, LP with regard to Lisle Senior Housing.

70.     Defendant RP Lisle, LP is an Illinois limited partnership with its designated office at Ryan Companies Illinois' office at 111 Shuman Blvd. Suite 400, Naperville, Illinois 60563. On information and belief, its sole general partner is RP Lisle GP, LLC.  The acts being committed by RP Lisle, LP are personally committed and/or approved by Defendant RP Lisle GP, LLC, its general partner.

71.     On information and belief, Defendant RP Lisle GP, LLC is also an owner and developer of Lisle Senior Housing.  As such, it is responsible for its design and/or construction and is a Design/Build Defendant; it is also an Owner Defendant necessary for complete relief. RP Lisle GP, LLC is located at Ryan Companies Illinois' office at 111 Shuman Blvd. Suite 400, Naperville, Illinois 60563.

## DESIGN AND CONSTRUCTION REQUIREMENTS UNDER THE FHAA

72.     Congress enacted the FHAA design and construction accessibility requirements as part of comprehensive amendments to the Fair Housing Act to prohibit discrimination on the basis of disability.[15]  The legislative history of the FHAA reflects Congressional findings that poorly designed and constructed buildings exclude persons with disabilities.  In considering the 1988 amendments to the Fair Housing Act, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including "architectural barriers" erected by developers and builders who fail to construct dwellings and public use areas accessible to and adaptable by people with disabilities. H.R. Rep. No. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.A.A.N. 2173, 2186; 134 Cong. Rec. S10454, 10463 (Aug. 1, 1988).

---

[15] The FHAA uses the term "handicap" rather than "disability."  Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that the definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988").  This complaint uses the terms "disability" and "handicap" interchangeably.  The term "disability" is more generally accepted.

73.     The FHAA mandates that multi-family buildings containing four (4) or more units, and built for first occupancy after March 13, 1991 ("covered multi-family dwellings") are subject to certain design and construction requirements.  Covered multi-family dwellings must provide:

     a.   public-use and common-use areas that are readily accessible to, and usable by, people with disabilities;

     b.   doors designed to allow passage into and within all premises within such dwellings that are sufficiently wide to allow passage by people in wheelchairs;

     c.   an accessible route into and through the dwellings;

     d.   light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

     e.   reinforcements in bathroom walls that allow for the later installation of grab bars; and

     f.   usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

74.     Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated the final FHAA design and construction regulations in January 1989.  24 C.F.R. § 100.205.  HUD published the final Fair Housing Accessibility Guidelines on March 6, 1991, 56 Fed. Reg. 9472, (hereinafter "FHAAG"), which incorporate the requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically handicapped people, A117.1-1986 (hereinafter "ANSI"), and the *Fair Housing Act Design Manual* in August 1996, which was revised in August 1998.

75.     The FHAA also prohibits discrimination in the rental of a dwelling or to otherwise make unavailable or deny a dwelling to an individual because of a disability, 42 U.S.C. § 3604(f)(1), or to discriminate in the terms, conditions, or privileges of a rental, or in the provision of services or facilitates in connection with the rental of a dwelling because of disability, 42 U.S.C. § 3604(f)(2).

76.     In order to receive LIHTC financing through the Illinois Housing Development Authority ("IHDA"), a certificate must be executed for each development.  The certificate requires an agreement to comply with all applicable federal and state accessibility requirements. (Illinois Housing Development Authority Standards for Architectural Planning and Construction Certificate and Excerpt of Relevant Standards, attached hereto as Exhibit E).  Thus, developers in Illinois utilizing LIHTCs must provide an architect's certification of agreement to comply with FHAA as a condition of accepting the LIHTCs.

77.     In Iowa, the Iowa Finance Authority Application Certification must be executed for each development to receive LIHTC.  The certificate requires the developer and architect to agree to comply with all laws set forth in the Building Standards Section of the Iowa Qualified Allocation Plan, including the FHAA.  (Iowa Finance Authority Application Certification and Excerpt of Relevant Standards, attached hereto as Exhibit F).  Thus, developers in Iowa utilizing LIHTCs must agree to comply with the FHAA as a condition of accepting the LIHTCs.

78.     Developers and/or owners of Illinois LIHTC properties also sign a Low Income Housing Tax Credit Extended Use Agreement in which they specifically agree to comply with the Fair Housing Act, as amended, 42 U.S.C § 3604,  the Americans with Disabilities Act, 42 U.S. C. § 12101 et seq.,  and the Rehabilitation Act of 1973, 29 U.S.C. § 794.  (Example of the Illinois Low Income Housing Tax Credit Extended Use Agreement (TP Gurnee), attached as Exhibit G (relevant excerpt)). Iowa also requires a Land Use Restrictive Covenants Agreement for LIHTC Program, in which owners must agree to comply with all applicable federal, state, and local laws, rules, ordinances, regulations and orders.  (Example of the Iowa Land Use Restrictive Covenants Agreement for Low Income Housing Tax Credit Program (TP Bettendorf), attached as Exhibit H (relevant excerpt)).

79.     Developers and/or owners of LIHTC properties must also recertify "at least annually" that:

> All units in the project were for use by the general public (as defined in Sec. 1.42-9), including the requirement that no finding of discrimination under the Fair Housing Act, 42 U.S.C. 3601-3619, occurred for the project.

Treasury Regulation 1.42-5(c)(1)(v). The regulations define "for use by the general public" to mean "the unit is rented in a manner consistent with housing policy governing non-discrimination, as evidenced by rules or regulations of the Department of Housing and Urban Development (HUD) . . . See HUD Handbook 4350.3." Id. at § 142-9(a). The HUD Handbook 4350.3 discusses non-discrimination under the Fair Housing Act.[16] These certifications are made under penalty of perjury and reviews of the developments must be made "at least annually covering each year of the 15-year compliance period under section 42(i)(l)." Id. at (c)(3).

## FACTUAL AND LEGAL ALLEGATIONS

80.     All of the properties developed by the Design/Build Defendants are residential properties with four or more units that were designed and constructed for first occupancy after March 13, 1991. These properties consist primarily of multi-story buildings with elevators, while some are single-story buildings. All of the dwelling units in the Subject Properties are "covered units" under the FHAA.

81.     All of the properties developed by the Design/Build Defendants are "dwellings" and contain "dwellings" within the meaning 42 U.S.C. § 3602(b) and are subject to the accessibility requirements of 42 U.S.C. §3604(f). All dwelling units in the Subject Properties developed, designed, constructed, owned and/or managed jointly or individually by the

---

[16] HUD Occupancy Handbook: Chapter 2: Civil Rights and Nondiscrimination Requirements (2007), *available at* http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4350.3/43503c2HSGH.pdf.

Design/Build Defendants are "covered multifamily dwellings" within the meaning of the FHAA (also referred to herein as "covered properties").

82.     Defendants have continued to develop/design/build dwellings covered by the FHAA.   TP Gurnee is a Ryan/Bergman/Thomas Associates development joint venture.  The TP Gurnee senior apartment complex is owned by TPA Gurnee, L.P., which has the same address as Thomas Associates.[17]  It was designed by Ryan Companies' Design Build Architectural Services, Inc. and constructed with tax credit financing through IHDA.[18]  The final certificate of occupancy for TP Gurnee was issued on May 24, 2012, and TP Gurnee had its grand opening on June 7, 2012.  Final certificates of occupancy were issued more recently for several Subject Properties, including, for example, Gardiner Place (May 30, 2013) and TP Orland Park (June 28, 2013).  This establishes development, design, and construction within two years of the filing of this action.

83.     Plaintiffs have identified at least one FHAA violation, and in most cases multiple violations, at each of the Tested Properties.

84.     Defendants' disregard for the FHAA in designing and building its properties is systemic.  Defendants' construction of the Subject Properties failed to ensure that the construction followed the FHAA standards and/or Defendants acted in reckless or callous disregard for compliance with the applicable legal standards and the federally protected rights of Plaintiffs.  As a result, the Subject Properties violate the FHAA either in design or construction, or both.

---

[17] Thomas Associates is identified as part of the TP Gurnee development team on Ryan's website.
[18] James N. Bergman is the Managing Member of TPA Gurnee GP, LLC, which is the general partner of TPA Gurnee, L.P.  Bergman and Ryan Companies are members of TPA Gurnee GP, LLC.

**Defendants' Engaged in a Pattern and/or Practice of
Violating the FHAA in the Design and/or Construction of Their Properties**

85.     Plaintiffs' site visits of Tested Properties revealed that the properties were not

built in accordance with the FHAA.  The Plaintiffs observed a pattern and/or practice of

construction and/or design violations in violation of 42 U.S.C. § 3604 (f)(3)(C), including but not

necessarily limited to:

- lack of usable kitchens in housing units because of insufficient clearance for maneuvering about the space and/or insufficient clearance at sinks and appliances;
- lack of usable bathrooms in housing units because of shower stalls and bathtubs that are too small;
- lack of usable bathrooms in housing units because of insufficient clearance for maneuvering at sinks; and
- interior thresholds inside housing units that are too high, rendering certain areas, such as patios and balconies, unusable.

86.     Plaintiffs observed a pattern and/or practice of construction and/or design

violations in the public and common areas in violation of 42 U.S.C. § 3604 (f)(3)(C),  including

but not necessarily limited to:

- lack of usable public and common-use bathrooms because of insufficient clearance for maneuvering about the space, equipment placed too high or too low, misplaced grab bars, and/or exposed pipes that are not insulated;
- lack of proper parking areas and/or lack of accessible routes to public areas;
- fitness areas that are inaccessible due to crowding of exercise equipment and lack of a navigable path through the space;
- mailboxes and environmental controls that are placed too high, making them inaccessible;
- protruding elements that present obstructions;
- exterior and interior thresholds and ramps that are too high or steep; and
- lack of an accessible route from handicap parking to entry due to excessive slopes of lack of curb cuts.

87.     Plaintiffs observed that Defendants' covered properties lack usable bathrooms in

housing units because of shower stalls and/or bathtubs that are too small and impede access in

violation of 42 U.S.C. § 3604(f)(3)(C) and in violation of FHAAG Requirement 7 , Guideline  2.

These properties include, but are not necessarily limited to: TP Waukee, Zurich Lake, TP Gurnee, and TP Fox Lake.

88.     Plaintiffs observed that Defendants' covered properties lack usable bathrooms in housing units because of insufficient clearance at essential fixtures such as sinks, in violation of 42 U.S.C. § 3604 (f)(3)(C) and in violation of FHAAG Requirement 7, Guideline 2.  These properties include, but are not necessarily limited to:  TP Gurnee, Gardiner Place, TP Fox Lake, Hometown Harbor, and TP Waukee.

89.     Plaintiffs observed that Defendants' covered properties lack usable kitchens in housing units because of insufficient clearance for maneuvering about the space, in violation of 42 U.S.C. § 3604 (f)(3)(C) and in violation of FHAAG Requirement 7, Guideline 1.  These properties include, but are not necessarily limited to:  TP Glendale Heights and TP Fox Lake.

90.     Plaintiffs observed high thresholds inside Defendants' covered housing units at showers impeding accessibility.  These properties include but are not necessarily limited to: TP Gardiner Place, TP Fox Lake, and TP Gurnee.

91.     Plaintiffs observed that exterior slopes on accessible routes from accessible parking spaces to entryways are too high, in violation of 42 U.S.C. § 3604 (f)(3)(C), FHAAG Requirement 1, and ANSI 4.3 and 4.5.  These properties include, but are not necessarily limited to: TP Glenview, Gardiner Place and TP Glendale Heights.

92.     Plaintiffs observed that Defendants' covered properties lack usable bathrooms in public and common-use areas because of insufficient clearance for maneuvering about the space, misplaced grab bars, equipment placed too high, and/or exposed pipes that were not insulated, in violation of 42 U.S.C. § 3604(f)(3)(C), FHAAG Requirement 2, and ANSI 4.22.  These

properties include, but are not necessarily limited to: TP Glenview, TP Bettendorf, HH East Moline, TP Fox Lake, and Gardiner Place.

93.     Plaintiffs observed that fitness areas at Defendants' covered properties are inaccessible due to crowding of exercise equipment and lack of a navigable path through the space, in violation of 42 U.S.C. § 3604 (f)(3)(C), FHAAG Requirement 2 and ANSI 4.3 and 4.4. Properties with such violations include, but are not necessarily limited to: TP Glenview and TP Fox Lake.

94.     Plaintiffs observed that the Defendants' covered properties lack accessible parking areas in violation of 42 U.S.C. § 3604 (f)(3)(C) and FHAAG Requirement 2, Guidelines 4 and ANSI 4.6.  These properties include, but are not necessarily limited to:  TP Gurnee, TP Glenview, TP Fox Lake, Hometown Harbor and Gardiner Place.

95.     The Design/Build Defendants violated the FHAA by failing to design and construct these properties in accordance with 42 U.S.C. § 3604 (f)(3)(C).

96.     Because the Design/Build Defendants Ryan Companies, Bergman and Thomas Associates have a demonstrated pattern and/or practice of FHAA violations and the untested properties developed, designed and/or built by these same Defendants share relevant common elements of design with many of the Tested Properties, including common bathroom and kitchen designs and similar floor plans, similar design and construction violations are likely to exist in the Remaining Portfolio of Defendants' properties that Plaintiffs have not been able to visit or are unaware of.  Plaintiffs expressly reserve the right to amend this complaint to add additional violations as they are discovered.

97.     The Design/Build Defendants Ryan companies, Bergman and Thomas Associates  continue to develop, design and build properties similar to the Tested Properties that share

relevant common elements of design, including common bathroom designs, kitchen designs, and similar floor plans. As such, similar design and construction violations are likely to exist in the senior housing facilities that Defendants are currently developing, designing and building and in the facilities that Defendants will develop, design and build in the future.

98.     For example, Defendant Ryan Companies is developing new senior housing in Lisle, Illinois under the name Lisle Senior Housing. Defendant Bergman is developing new senior housing in Waukee, Illinois under the name Alice Place. Defendant Thomas Associates recently completed new senior housing apartments in Glendale Heights, Illinois, named TP Glendale Heights. On information and belief, Lisle Senior Housing, Alice Place, and TP Glendale Heights share common design elements derived from the Thomas Place "senior prototype," first developed and utilized by Bergman, Ryan Companies, and Thomas Associates for TP Glenview and replicated in other Tested Properties.

99.     Plaintiffs' testing shows a pattern and/or practice of non-compliance with the FHAA design and/or construction requirements by Defendants Ryan Companies, Bergman and Thomas Associates at each of their tested properties. Plaintiffs expressly reserve the right to amend this complaint to add additional violations as they are discovered.

**Examples of Violations Observed by Plaintiffs at Defendants'
Properties Provides Evidence of Defendants' Pattern and/or Practice of
Violating the FHAA in the Design and/or Construction of Covered FHA Dwelling Units**

100.     Most, if not all, of the Design/Build Defendants' properties suffer from serious fair housing deficiencies. The following examples of particular Defendants' properties provide details of the types of FHAA construction[19] violations that the Plaintiffs observed at each of the properties they visited or discovered through other investigation. These specific examples are illustrative, not exhaustive, of Defendants' pattern and/or practice of FHAA violations:

---

[19] Each of these FHAA construction violations may also be design violations.

**TP Fox Lake**

101.     TP Fox Lake is a covered, age-restricted, multi-family, affordable senior

apartment complex in Fox Lake, Illinois with approximately 100 dwelling units.  Based on

information and belief, construction was completed on the complex in 2010.  The FHAA

violations Plaintiffs observed include, but are not limited to the following:

a.     Parking access aisles with structural concrete obstructions in the aisle that prevent wheelchair users from having sufficient room to set up and transfer to a wheelchair, in violation of FHAAG Requirement 2, Guideline 4, and ANSI 4.6.

b.     Designated accessible parking spaces lack an access aisle, others lack curb cuts to provide access to the sidewalk or lack concrete stoppers to prevent parking over the sidewalk and some lack proper markings and signage, in violation of FHAAG Requirement 2, Guideline 4, and ANSI 4.6.

c.     Kitchen clearances are insufficient to allow a person in a wheelchair to maneuver about the space, in violation of FHAAG Requirement 7, Guideline 1 and ANSI 4.2.  For example, Plaintiffs observed that there is not enough room to allow a person in a wheelchair to approach the sink from the side because there is less than 24 inches from the centerline of the sink to the nearest obstruction.  Plaintiffs observed that U-shaped kitchens were less than 60" wide as required to allow adequate wheelchair maneuvering space.

d.     Bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space, in violation of FHAAG Requirement 7, Guideline 2 and ANSI 4.2, 4.2.4, and 4.19.3. Plaintiff observed that sinks were less than the minimum 24 inches from the center line to the nearest obstruction.

e.     Bathrooms in units with only showers lack adequate maneuvering spaces for persons with wheelchairs where shower stalls were less than 36" x 36", in violation of FHAAG Requirement 7, Guideline 2.

In addition, the entry to shower stalls has a 5-inch unbeveled step impeding access into

and out of the shower.

**TP Waukee**

102.     TP Waukee is a covered, age-restricted, multi-family, affordable senior apartment complex in Waukee, Iowa with approximately 116 dwelling units.  Based on information and belief, construction was completed on the complex in 2011.  The FHAA violations Plaintiffs observed include, but are not limited to the following:

a.       Kitchen clearances are insufficient to allow a person in a wheelchair to maneuver about the space, in violation of FHAAG Requirement 7, Guideline 1 and ANSI 4.2.  For example, Plaintiffs observed that there is not enough room to allow a person in a wheelchair to approach the sink from the side because there is only 18" from the center of the sink to the nearest obstruction, not the required 24", and the agent stated that the base cabinets are not removable to allow a forward approach.  The stove was also not centered on a 30" x 48" clear floor space.

b.       Units lack usable bathrooms as the bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space, in violation of FHAAG Requirement 7, Guideline 2 and ANSI 4.2. Plaintiff observed that sinks are less than the minimum 24 inches from the center line to the nearest obstruction and shower stalls were less than 36" x 36".

c.       Accessible parking spaces are obstructed by a fenced area for trash cans in violation of FHAAG Requirement 2, and ANSI 4.6.

d.       Common area threshold from hallway to community room exceeded ½ inch in height and is not beveled, in violation of FHAAG Requirement 2, and ANSI 4.3.

**Gardiner Place**

103.     Gardiner Place is a covered, age-restricted, multi-family, affordable senior apartment complex in East Dundee, Illinois with approximately 82 dwelling units.  Based on information and belief, construction was completed on the complex in 2013.  The FHAA violations Plaintiffs observed include, but are not limited to the following:

a.       Exterior accessible route from visitor parking to the front door has an excessive slope of 13.8% without handrails, in violation of FHAAGG Requirement 2 and ANSI 4.3.

b.     Units lack usable bathrooms as the bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space, in violation of FHAAG Requirement 7, Guideline 2 and ANSI 4.2, and 4.2. Plaintiff observed that sinks are less than the minimum 24 inches from the center line to the nearest obstruction, in violation of FHAAG Requirement 7, Guideline 2.

c.     Kitchen clearances are insufficient to allow a person in a wheelchair to maneuver about the space.   Plaintiff observed that there is not enough room to allow a person in a wheelchair to approach and use the microwave oven, which was in the corner, in violation of FHAAG Requirement 7, Guideline 2 and ANSI 4.2.

In addition, the entry to shower stalls has a 5-inch unbeveled step impeding access into and out of the shower.

### Thomas Place Gurnee ("TP Gurnee")

104.     TP Gurnee is a covered, age-restricted, multi-family, affordable senior apartment complex in Gurnee, Illinois with approximately 100 dwelling units.  Based on information and belief, construction was completed on the complex on May 24, 2012.  The FHAA violations Plaintiffs observed include, but are not limited to the following:

a.     Bathrooms in units with only showers lacked adequate maneuvering spaces for persons with wheelchairs where shower stalls were less than 36" x 36", in violation of FHAAG Requirement 7, Guideline 2(a)(iii).

b.     Units lack usable bathrooms as the bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space, in violation of FHAAG Requirement 7, Guideline 2 and ANSI 4.2.  Plaintiffs observed that there is 15" from the center line of the sink to the nearest obstruction, less than the minimum 24 inches to allow a parallel approach in a wheelchair and the sink cabinets were not removable.

c.     Designated accessible parking spaces have obstructions in access aisles and lacked proper signage, in violation of FHAAG Requirement 2, Guideline 4, and ANSI 4.6.

d.     Thresholds within units are too high, rendering certain areas, such as patios and balconies, unusable, in violation of FHAAG Requirement 4, Guidelines 4 and 5.

In addition, Plaintiffs observed shower stalls with 5" and 8" unbeveled threshold steps impeding access into and out of the shower.

**Thomas Place Glendale Heights ("TP Glendale Heights")**

105.    TP Glendale Heights is a covered, age-restricted, multi-family, affordable senior apartment complex in Glendale Heights, Illinois with approximately 81 dwelling units.  Based on information and belief, construction was completed on the complex in 2013.  The FHAA violations Plaintiffs observed include, but are not limited to the following:

   a.  Kitchen clearances are insufficient to allow a person in a wheelchair to maneuver about the space, in violation of FHAAG Requirement 7, Guideline 1 and ANSI 4.2.  For example, Plaintiffs observed that there is not enough room to allow a person in a wheelchair to approach the sink from the side because there is only 19" from the centerline of the sink to the nearest obstruction, less than the 24" required, and the cabinets were not removable to allow a forward approach. Plaintiffs observed that U-shaped kitchens are 54" wide, less than 60" wide as required to allow adequate wheelchair maneuvering space.

   b.  Units lack usable bathrooms as the bathroom clearances are insufficient to allow a person in a wheelchair to maneuver about the space, in violation of FHAAG Requirement 7, Guideline 2. Plaintiffs observed 15 to 20 inches from the center line of the sink to the nearest obstruction, less than the minimum 24 inches.

   c.  Lack of an accessible route due to excessive sloping, in violation of FHAAG Requirement 2, Guidelines 1 and ANSI 4.3.

106.    Because of this demonstrated pattern and/or practice of FHAA design violations, additional design violations very likely exist other senior apartment developments by Ryan Companies, Bergman, and/or Thomas Associates and in architectural plans of future developments by them that Plaintiffs have not been able to review.  Plaintiffs expressly reserve the right to amend this complaint to add additional violations as they are discovered.

107.    In doing the acts or in omitting to act as alleged herein, each employee or officer of each Defendant was acting in the course and scope of his or her actual or apparent authority

pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by each Defendant as principal.

108.    The acts of the Design/Build Defendants were intentional and/or undertaken with reckless or callous disregard for the law and the injuries they cause to persons with disabilities and to Plaintiffs in pursuit of their missions to protect the rights of disabled persons to have accessible dwellings.

## INJURY TO PLAINTIFFS

109.    As a result of the illegal and discriminatory actions described above, Defendants directly and substantially injured Plaintiffs by frustrating their missions of creating communities with accessible, barrier-free housing for disabled persons.  Plaintiffs pursue these missions through the provision of programs and services that encourage the development of accessible housing, educate the public about fair housing rights and requirements, provide housing counseling and search resources for persons with disabilities, provide resources to housing developers to assist in the production of accessible housing, and work to eliminate discriminatory housing practices.

110.    Plaintiffs have also been injured by being forced to divert scarce resources to identify and counteract Defendant's unlawful housing practices where those resources could have been used to provide services and conduct other educational activities instead of countering Defendants' discriminatory conduct.

111.    Plaintiffs have had to invest considerable time, effort and funds in education to the public to counter Defendants' discrimination regarding design and construction.  For example, HOPE has taken steps to counter the discrimination by conducting outreach to seniors via mail to centers for independent living in its service area.  HOPE also expended funds to

publish an ad – created by NFHA regarding housing accessibility -- in the *Business Ledger*, a subsidiary of the *Daily Herald* newspaper.  In addition, HOPE provided an education session for a developer and conducted a webinar on behalf of NFHA for over 500 persons on the rights of persons with disabilities in housing.

112.   Open Communities has taken steps to counter the discrimination at the Subject Properties by conducting outreach to local municipalities to emphasize the importance of FHAA accessibility standards and to encourage municipalities to ensure that local building codes incorporate the safe harbors recognized by HUD.  Open Communities is partnering with NFHA on this outreach to municipalities.  Together they are also: (a) reaching out to senior housing providers to provide educational materials about disability discrimination; (b) developing educational materials regarding design and construct requirements under the FHAA; (c) printing accessibility toolkits for distribution in the community; and (d) purchasing advertisements in Wilmette, Winnetka, Highland Park, Glenview, and Northbrook, Illinois regarding fair housing.

113.   In addition to partnering with Open Communities, NFHA has taken steps to counter the disability discrimination by conducting targeted outreach and education in communities where Defendants' violations of the FHAA occurred in Iowa, including outreach in the *Des Moines Register*.

114.   Plaintiffs have invested substantial time and effort in an attempt to secure compliance with the FHAA by Defendants, including investment of time and resources in assessing and inspecting the Tested Properties identified herein.

115.   Each time the Design/Build Defendants designed and constructed covered dwellings that did not comply with the FHAA, they frustrated the mission of Plaintiffs in that they served to discourage people with disabilities from living at those dwellings and encouraged

other entities involved in the design, construction and rental of covered units to disregard their own responsibilities under the FHAA. The effect of this injury is cumulative and ongoing.

116.     The Design/Build Defendants' conduct has reduced the effectiveness of Plaintiffs' outreach efforts and caused Plaintiffs to provide additional educational programs to rebut the impression that constructing inaccessible housing is permissible.

117.     The Design/Build Defendants' continuing discriminatory actions have forced Plaintiffs to divert significant and scarce resources to identify, investigate and counteract Defendants' discriminatory actions, and such practices have frustrated Plaintiffs' other efforts to promote barrier-free communities and to stop discrimination, causing NFHA, HOPE and Open Communities to suffer concrete and demonstrable injuries. For over a year, HOPE, NFHA and Open Communities have been conducting an investigation of Defendants, including testing nine senior apartment complexes to determine compliance with the law. These efforts caused Plaintiffs to divert significant resources in terms of staff time, salaries, travel and incidental expenses that they would not have had to expend were it not for Defendants' violations.

118.     The Design/Build Defendants' discriminatory acts have had a pervasive harmful impact on persons with disabilities to whom Plaintiffs provide services by depriving them of essential affordable and accessible housing resources.

119.     Plaintiffs are "aggrieved persons" under the FHAA, 42 U.S.C. §§ 3602 (d) and (i).

120.     Until these violations are remedied, the Design/Build Defendants' illegal and discriminatory actions will continue to injury Plaintiffs by, *inter alia,*

> a.     interfering with efforts and programs intended to bring about equality of opportunity in housing;
>
> b.     requiring the commitment of scare resources, including significant staff time and funding to investigate and counter the Design/Build Defendants' illegal conduct, thus diverting those resources from

Plaintiffs' other activities, such as education, outreach, and counseling; and

c.       frustrating Plaintiffs' missions and goals of promoting the equal availability of housing to all persons without regard to any protected category, including disability.

## LEGAL CLAIMS

**Violations of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)-(f)(2) and (f)(3)(C)
by the Design/Build Defendants**

121.    Plaintiffs incorporate herein all preceding paragraphs.

122.    The properties specified in Exhibit A ("Subject Properties") are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7), built for first occupancy after March 13, 1991, and subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHAA.  The public and common use areas of the properties specified in Exhibit A are also subject to the design and construction requirements of 42 U.S.C. § 3604(f)(3)(C).

123.    The Design/Build Defendants, jointly and severally, have failed to design and/or construct the Subject Properties so that:

a.       the public use and common use portions are readily accessible to and usable by persons with disabilities;

b.       all covered units contain the required features of accessible and adaptive design, specifically but not limited to, usable kitchens and bathrooms such that a person in a wheelchair can maneuver about the space.

124.    Through the actions and inactions described above, the Design/Build Defendants, jointly and severally, have failed and/or refused to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. Part 100.205.

125.     Design/Build Defendants have also discriminated in the rental of, otherwise made unavailable, or denied dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1).

126.     Design/Build Defendants have also discriminated against persons because of their disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2).

127.     Design/Build Defendants have engaged in a continuing pattern and/or practice of violating the FHAA in that they have systemically and repeatedly designed and/or constructed and/or rented covered multi-family dwellings in violation of the requirements of the FHAA and in flagrant disregard of their own express certifications of compliance with these requirements. This practice is ongoing and continues through the present.

128.     The Design/Build Defendants' conduct described herein has been intentional, willful, and with callous disregard for the rights of people with disabilities.

129.     As a result of the Design/Build Defendants' wrongful conduct, NFHA, HOPE and Open Communities each have been injured by a discriminatory housing practice and are, therefore, "aggrieved persons" as defined by the FHAA, 42 U.S.C. § 3602(i).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that this Court grant judgment in their favor and enter an Order against Defendants, jointly and severally, as follows:

A.  Declaring, pursuant to 28 U.S.C. § 2201, the conduct of the Design/Build Defendants, as alleged herein, constitutes a pattern and/or practice of discrimination in violation of the FHAA, 42 U.S.C. § 3604 (f)(1)-(f)(2), and (f)(3)(C); and

B.  Enjoining:

1. the Design/Build, Management, and Owner Defendants, their officers, directors, employees, agents, successors, assigns, partners, members, and all other persons in active concert or participation with any of them from failing or refusing to bring the covered dwelling units and the public use and common use areas at each of the Tested Properties into immediate compliance with the requirements of 42 U.S.C. §3604(f)(3)(C) and the applicable regulations; to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court; and to perform or allow such other acts as may be necessary to effectuate any judgment of this Court against them;

2. the Management Defendants and Owner Defendants, their officers, directors, employees, agents, successors, assigns, partners, members, and all other persons in active concert or participation with any of them from renting covered dwelling units in their respective Tested Properties until all such units and the public and common use areas of their Subject Properties have been brought into compliance with the requirements of 42 U.S.C. § 3604 (f)(3)(C) and the applicable regulations;

3. the Remedial Defendants from refusing to permit any survey and, where necessary, retrofits of covered properties that may be ordered by this Court to bring properties designed or built by Defendants into full compliance with the FHAA.

C. Permanently enjoining the Design/Build Defendants from failing or refusing to design and/or construct any covered multi-family dwellings in the future in compliance with the FHAA and applicable regulations.

D. Ordering the Design/Build, Management, Owner and Remedial Defendants to:

1. Survey, jointly with the Plaintiffs, each and every apartment complex in their development portfolio containing covered units and common and public use areas other than the Tested Properties ("Remaining Portfolio") and assess the compliance of each with the accessibility requirements of the FHAA;

2. Report to the Court the extent of the noncompliance of the Remaining Portfolio with the accessibility requirements of the FHAA; and

3. Bring each and every such apartment community into compliance with 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations.

E.  Award such compensatory damages as would fully compensate Plaintiffs for the
injuries incurred as a result of the discriminatory housing conduct of the
Design/Build Defendants;

F.  Award such punitive damages against the Design/Build Defendants as permitted
under the law;

G.  Award Plaintiffs their costs, attorneys' fees, and expenses; and

H.  Award such other relief as this Court deems just and proper.


**JURY TRIAL DEMANDED**

Respectfully submitted,


s/Janell M. Byrd                                s/ Jennifer K. Soule
JANELL M. BYRD*                                 JENNIFER K. SOULE
ELLEN L. EARDLEY*                               **SOULE, BRADTKE & LAMBERT**
**MEHRI & SKALET, PLLC**                        533 S. Division Street, Suite B
1250 Connecticut Avenue, N.W.                   Elmhurst, Illinois 60126
Suite 300                                       Phone: 630.333.9144
Washington, D.C. 20036                          Facsimile: 630.607.0266
Phone: 202.822.5100                             E-Mail:  jsoule@sbllegal.com
Facsimile: 202.822.4997
E-Mail:  jbyrd@findjustice.com
         eeardley@findjustice.com

                                                s/ Morgan Williams
                                                MORGAN WILLIAMS*
                                                **NATIONAL FAIR HOUSING ALLIANCE**
                                                1101 Vermont Avenue, N.W.
                                                Suite 710
                                                Washington, D.C. 20005
                                                Phone: 202.898.1661
                                                Facsimile: 202.371.9744
                                                E-Mail: mwilliams@nationalfairhousing.org

May 1, 2014

*Application for admission *pro hac vice* to be filed.